IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

GABRIEL D. MONTENEGRO,              )
                                   )
        Plaintiff,                 )
                                   )
                                   )        NO. 3:23-cv-01265
v.                                 )
                                   )        JUDGE RICHARDSON
VACO LLC,                          )
                                   )
        Defendant.                 )
                                   )

## **MEMORANDUM OPINION**

Pending before the Court, in this putative so-called collective action under the Fair Labor

Standards Act ("FLSA"), is a motion for court-authorized notice (Doc. No. 38, "Motion") filed by

Plaintiff, Gabriel D. Montenegro. Via the Motion, Plaintiff "move[s] for court-authorized notice

of this lawsuit to all similarly situated employees under the [FLSA,] 29 U.S.C. § 216(b)." (Doc.

No. 38 at 1). Specifically, and as shown by the proposed notice (Doc. No. 39-2, "Proposed Notice")

that Plaintiff filed along with the Motion, Plaintiff seeks permission to conduct a court-authorized

notice to all current and former "Recruiters" who worked for the Defendant, Vaco LLC

(hereinafter, "Defendant," "Vaco," or "Vaco LLC"), "during the past three years" (the "FLSA

Collective"). (Doc. No. 39-2 at 3).[1] Plaintiff defines Recruiters to be "any employee with the job

---

[1] The Court discerns that by using the phrase "past three years," Plaintiff means to define the FLSA
Collective as being comprised of individuals who worked as Recruiters at Vaco LLC at any time during the
period beginning three years prior to the date that the complaint (Doc. No. 1 "Complaint") was filed and
ending on the date that the Complaint was filed—that is from December 1, 2020 to December 1, 2023 (the
date that the Complaint was filed). This date range makes sense for two reasons. First, in his Complaint,
Plaintiff alleges that "Plaintiff brings this action on behalf of all of Defendant's current and former recruiters
who worked for Defendant at any time during the past three years." (Doc. No. 1 at ¶ 37). Second, the statute
of limitations in FLSA cases is generally two-years and is three-years in cases of a willful violation of the
FLSA, 29 U.S.C. § 255(a), and the statute runs until individuals affirmatively opt in. *See Crosby v. Stage
Stores, Inc.*, 348 F. Supp. 742, 750 (M.D. Tenn. 2018) ("The statute of limitations is not tolled for any
individual class member until that individual has filed a 'written consent to join form' with the court."

title of Associate, Senior Associate, Associate Director, Director, Senior Director, or Managing Director." (Doc. No. 39-2 at 3 n.1).

Plaintiff has filed a brief (Doc. No. 39, "Opening Brief") in support of the Motion, together with numerous exhibits (Doc. Nos. 39-2 – 39-28). Defendant has filed a response (Doc. No. 40, "Response") in opposition to the Motion, together with several exhibits (Doc. Nos. 40-1 – 40-4). Plaintiff has filed a reply (Doc. No. 43, "Reply") in further support of the Motion, together with a single exhibit. (Doc. No. 43-1).[2]

For the reasons described below, the Motion will be **GRANTED** to the extent that it seeks to send court-authorized notice to members of the FLSA Collective and **DENIED** to the extent that it seeks to send notice in the form that Plaintiff has proposed and to the extent it seeks to have Plaintiff's counsel appointed as counsel for the FLSA Collective.

---

(quoting 29 C.F.R. § 790.21(b)(2))). *Thomas v. Acopia*, LLC, No. 3:14-cv-0974, 2015 WL 13667053, at *5 (M.D. Tenn. Mar. 23, 2015) ("the statute of limitations continues to run and the pool of timely claims continues to shrink until either all putative class members' claims have become time-barred or they have consented to join the suit within the limitations period.").

Importantly for this action—given that the Motion has been pending for some time (since August 30, 2024), meaning that some potential claims of the FLSA Collective are likely now barred by the statute of limitations—the FLSA's statute of limitations can be subject to equitable tolling. *See Ware v. T-Mobile USA*, No. 3:11-CV-0411, 2012 WL 13322790, at *6 (M.D. Tenn. Aug. 28, 2012) (collecting cases). And indeed, where motions for court-authorized notice have been pending for some time, courts have found that the equitable tolling of the statute of limitations is warranted. *Biggs v. Quicken Loans, Inc.*, No. 10-CV-11928, 2014 WL 12661985, at *5 (E.D. Mich. Feb. 19, 2014) (granting Plaintiff's request for equitable tolling and observing that "[e]quitable tolling of FLSA cases due to extended periods of delay due to Court action or order is common"); *Klick v. Cenikor*, 509 F. Supp. 3d 951, 959-60 (S.D. Tex. 2020).

As will be explained in more depth below, the Court for now declines to resolve the issues of (i) whether equitable tolling applies to any of the claims in this action and (ii) to what extent Plaintiff has sufficient evidence of willfulness to justify application of a three-year limitations period (rather than the two-year limitations period).

[2] Plaintiff has also filed a notice of supplemental authority (Doc. No. 49), therein informing the Court of the case *Thomas v. TEKsystems, Inc.*, Case No. 2:21-cv-460, 2025 WL 756067 (W.D. Pa. Mar. 10, 2025).

<u>BACKGROUND</u>[3]

Below, the Court will first analyze the procedural background that is relevant to the instant Motion, then analyze the factual background of this action, explain the substance of Plaintiff's claim in this action, and finally address the Motion's requested relief and the parties' arguments with respect to the Motion.

1. <u>Procedural Background</u>

Plaintiff initiated this lawsuit on December 1, 2023, by filing his collective action[4] complaint (Doc. No. 1, "Complaint"). On January 31, 2024, Defendant filed an answer (Doc. No. 14, "Answer") to Plaintiff's Complaint, and on July 1, 2024, Defendant filed an amended answer (Doc. No. 35, "Amended Answer") to the Complaint.

Between the filing of the Answer and the filing of the Amended Answer, specifically on March 18, 2024, the Court entered the Initial Case Management Order (Doc. No. 26), therein providing, in relevant part:

> In accordance with the Order at ECF No. 8 in this case, the parties intend to continue attempts to reach an agreement for court-approved notice. If no agreement is reached by February 29, 2024, the parties are permitted to begin full fact discovery concerning not only whether Court-approved notice is proper, but also the merits of the Plaintiff's underlying claim against Defendant.
>
> By no later than August 30, 2024, Plaintiff must file his motion for Court-approved notice to potentially similarly-situated plaintiffs. Defendant must file its response within 21 days of Plaintiff's motion, and Plaintiff may file an optional reply within 7 days of Defendant's response.

---

[3] When citing to a page in a document filed by one of the parties, the Court endeavors to cite to the page number ("Page __ of __") added by the Clerk's Office as part of the pagination process associated with Electronic Case Filing if such page number differs from the page number originally provided by the author/filer of the document.

[4] The concept of a "collective action" under the FLSA will be discussed in more depth below.

(Doc. No. 26 at 5). The parties subsequently engaged in discovery concerning whether court-authorized notice would be proper (Doc. No. 39 at 1; Doc. No. 40 at 2), and Plaintiff filed the instant Motion on August 30, 2024.

2. Purported Facts[5]

---

[5] The Court provides this factual background primarily to show those facts that the evidence, presented mostly by Plaintiff but also (to a lesser extent) by Defendant, reasonably suggests exist. At this juncture, the Court is not accepting any of the facts laid out as *true* either for the purposes of the Motion or any other purpose.

Indeed, as will become clear below, the decision of the Court herein is not predicated on whether certain facts are true or are accepted as true. Rather, the Court's decision is predicated on whether Plaintiff has mustered sufficient evidence to suggest that facts exist to support the Court finding a strong likelihood that Plaintiff and the members of the FLSA Collective are "similarly situated." *Cf. Walters v. Abbott Lab'ys*, No. 2:24-CV-1972, 2026 WL 522856, at *2-4 (S.D. Ohio Feb. 24, 2026) (evaluating whether a plaintiff has satisfied its burden of showing a strong likelihood that he and other employees were similarly situated by considering the evidence plaintiff mustered); *Pack v. Gemini Solar LLC*, No. 2:23-CV-1156, 2024 WL 6874231, at *4-5 (S.D. Ohio July 30, 2024) (same). Naturally, the Court's decision also involves weighing the evidence that Defendant has mustered to consider whether that evidence suggests that facts exist that would support the Court *declining* to find a strong likelihood that Plaintiff and members of the FLSA Collective are "similarly situated." *Cf. Isaacs v. Landmark Recovery of Louisville, LLC*, No. 3:23-CV-00210, 2023 WL 6096730, at *12-13 (M.D. Tenn. Sept. 18, 2023) (weighing plaintiff's *and* defendant's evidence and arguments in considering whether plaintiff met its burden of showing a strong likelihood that he and other employees were similarly situated).

Importantly, at this juncture, the Court's task is not to make factual determinations or to resolve factual disputes. *See e.g., Dorta v. SpecialtyCare, Inc.*, No. 3:23-CV-00892, 2024 WL 2164616, at *3 (M.D. Tenn. May 14, 2024) ("the Court's role at this stage, is not to 'consider the merits of the claims, resolve factual disputes, or decide substantive issues'" (quoting *Polen v. JSW Steel USA Ohio, Inc.*, No. 2:22-CV-00085, 2023 WL 6860399, at *6 (S.D. Ohio Oct. 18, 2023))). *See also Hogan v. Cleveland Ave Rest., Inc.*, 690 F. Supp. 3d 759, 776 (S.D. Ohio 2023) (same). Indeed, some of the (purported) facts stated herein (or stated in the parties' briefing on the Motion) have been purported to be true by one party and not conceded by the other party, and at this juncture, the Court will not resolve any of these disputes.

The Court acknowledges that its elucidation of the proper approach to determining whether a plaintiff has shown a strong likelihood that he and other employees were similarly situated—i.e., determining whether (i) plaintiff has presented *evidence* (ii) to support the existence of *facts* (iii) that *would establish a strong likelihood* of the requisite situational similarity—may appear somewhat novel. Nevertheless, the Court feels compelled to make such an elucidation herein given that a review of district court opinions in this Circuit following the seminal Sixth Circuit case addressing court-authorized notice—*Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023), which is discussed further below—reveals that district courts have taken to not explicitly noting, in considering whether court-authorized notice is proper, what facts they are taking as true or indeed how they are treating any purported facts as a threshold matter. Instead, district courts generally have noted that the analysis of whether court-authorized notice is proper is predicated on whether a plaintiff has presented sufficient *evidence* to support a finding of a strong likelihood of "similarly situatedness." Accordingly, the Court felt a need to make explicit exactly what it conceives the analytical framework applicable to be, including just how that framework dictates the Court treat particular (purported) facts.

####### a. The Parties

######### i. Defendant

Defendant is a "limited liability company headquartered in Brentwood, TN." (Doc. No. 39 at 2 (citing Doc. No. 35 at ¶¶ 7-8)). Defendant has roughly 50 operating office locations in the United States. (Doc. No. 39-7). Defendant's general purpose is "recruiting"—i.e., finding qualified job candidates for its clients. (Doc. No. 39 at 3 (citing Doc. No. 39-5 at 30:2-4)).

Among Defendant's employees, recruiting responsibilities are allocated across employees holding any one of seven job titles, namely the titles of Associate, Senior Associate, Associate Director, Director, Senior Director, or Managing Director and Managing Partner.[6] (Doc. No. 39 at 2-3 (citing Doc. No. 39-5 at 21:6-15, 25:23-26:6; Doc. No. 39-13; Doc. No. 39-14)). For those falling into the first six of these categories—i.e., the Recruiters—the primary job responsibility is "finding qualified candidates" for Defendant's clients. (Doc. No. 39 at 3 (citing Doc. No. 39-5 at 30:12-23, 31:8-22; Doc. No. 39-4 at 33:20-34:2)). Defendant employs roughly "200-250 Recruiters at any given time to locate and retain candidates for open job opportunities." (Doc. No. 39 at 3 (citing Doc. No. 39-5 at 24:2-24)). Further, regardless of where the Recruiters work (or whether they work "remotely"), the Recruiters "provide the same services to clients and are subject to the same Vaco policies and procedures." (Doc. No. 39 at 3 (citing Doc. No. 39-5 at 30:5-7; Doc. No. 39-4 at 35:17-19)). Additionally, the Recruiters receive similar offer letters (conveying an

---

 For context, the Court notes that the factual background the Court recounts herein is derived in large part from the parties' (and predominantly Plaintiff's) briefing on the Motion, as well as the evidentiary support (in the form of exhibits to that briefing) that has been submitted to the Court.

[6] Following the style of Plaintiff in the Proposed Notice and the Opening Brief, the Court will refer to those individuals who hold (or held) the roles of Associate, Senior Associate, Associate Director, Director, Senior Director, and Managing Director (but *not* the role of Managing Partner) at Vaco LLC collectively as "Recruiters." Notably, it appears that anyone employed at Defendant with recruiting responsibilities is either one of the Recruiters or a Managing Director.

offer of employment with Defendant) and similar employment agreements. (Doc. No. 39 at 4 (citing Doc. No. 39-5 at 35:2-17, 59:6-17, 60:3-61:23, 63:10-14, 66:2-67:17; Doc. No. 39-8; Doc. No. 39-9)). Likewise, Recruiters are paid a salary "with a commission plan and are expected to work at least 40 hours per week." (Doc. No. 39 at 4 (citing Doc. No. 39-8; Doc. No. 39-5 at 56:13-16)).

Defendant also employs salespeople at each of its office locations. (Doc. No. 39 at 3 (citing Doc. No. 39-4 at 31:17-19, 45:18-20)). "Salespeople serve as intermediaries; communicating between [Defendant's] clients, which are companies looking to fill open jobs; and [Defendant's] Recruiters, which are tasked with sourcing candidates for those jobs." (Doc. No. 39 at 3 (citing Doc. No. 39-4 at 32:11-23, 41:18-24, 57:14-58:9)).

ii.  Plaintiff[7]

Plaintiff worked as a Recruiter for Defendant from approximately "December 5, 2022 to June 16, 2023 as a 'Senior Associate.'" (Doc. No. 39 at 5 (citing Doc. No. 35 at ¶¶ 10-11; Doc. No. 39-6 at 43:13-24; Doc. No. 39-8)).[8] Plaintiff earned a "base salary of $60,000," (Doc. No. 39 at 5 (citing Doc. No. 35 at ¶¶ 10-11; Doc. No. 39-6 at 43:13-24; Doc. No. 39-8); Doc. No. 39-6 at 39:8-10), and "was eligible to earn commissions." (Doc. No. 39 at 5 (citing Doc. No. 39-6 at 44:16-18; Doc. No. 39-8)). Plaintiff and the other Recruiters "were expected to work general business

---

[7] Of note, since this action was filed, six additional individuals have opted to join this suit. (Doc. No. 37). Additionally, 10 Recruiters (including five of the six individuals who have opted to join this suit), beyond Plaintiff, have submitted declarations in support of the Motion. (Doc. Nos. 39-19 - 39-28).

[8] A Senior Associate "is responsible for identifying, screening, and managing candidates and consultants for contract and direct-hire positions. This position works with the sales team to fulfill open job orders while managing candidates and consultants throughout the hiring process. This position will collaborate with business stakeholders, business leaders and subject matter experts to plan and deliver projects effectively and timely." (Doc. No. 39-15 at 2).

hours, ranging from 8:00am-5:00pm or 9:00am-6:00pm." (Doc. No. 39 at 6 (citing Doc. No. 39-5 at 74:7-13)).

3. Plaintiff's Claim

Via the Complaint, Plaintiff brings a claim for violation of the FLSA. Specifically, Plaintiff alleges that Defendant misclassified him and other Recruiters as administrative employees (explained in more detail in the footnote below) and thus as being exempt under the FLSA—and based on this misclassification did not pay Plaintiff and other Recruiters overtime pay as required by the FLSA.[9] (Doc. No. 1 at ¶¶ 12, 38).

---

[9] For context, the Court will note herein some general information on the FLSA as it relates to Plaintiff's claim in particular.

The FLSA "was enacted 'to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to shorten hours because of the pressure of extra cost.'" *Perry v. Randstad Gen. Partner (US) LLC*, 876 F.3d 191, 196 (6th Cir. 2017) (quoting *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460 (1948)). "Consistent with this goal, the [FLSA] requires employers to pay their employees time-and-a-half for work performed in excess of forty hours per week, but exempts 'bona fide executive, administrative, or professional' employees from the overtime pay requirements." *Acs v. Detroit Edison Co.*, 444 F.3d 763, 764–65 (6th Cir. 2006) (quoting 29 U.S.C. § 213(a)(1); other citations omitted) (brackets and other internal quotation marks removed)).

The Department of Labor has promulgated certain regulations to determine what constitutes an administrative employee. These regulations (as they existed at the time that the Complaint was filed) provided in relevant part:

> (a) The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:
> > (1) Compensated on a salary or fee basis pursuant to § 541.600 at a rate of not less than $684 per week (or $455 per week if employed in the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, or the U.S. Virgin Islands by employers other than the Federal government, or $380 per week if employed in American Samoa by employers other than the Federal government), exclusive of board, lodging or other facilities;
> > (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> > (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a) (2019). Although the Complaint is somewhat unclear on this point, the Opening Brief and the Response suggests that Plaintiff contends that he and other Recruiters were misclassified as

4. <u>The Motion and the Parties' Arguments</u>

Via the instant Motion, Plaintiff seeks an order:

(1) Permitting Plaintiff to send notice to the proposed FLSA Collective;
(2) Requiring Defendant to identify all putative FLSA Collective members by providing a list of their names, last known addresses, dates and location of employment, phone numbers, and email addresses in electronic and importable format within ten (10) days of the entry of the order;
(3) Authorizing Plaintiff's proposed form of notice (Exhibits A & B) and implementing a procedure whereby the notice of Plaintiff's FLSA claim is sent (via U.S. Mail, email, and text message) to:
> All current and former Recruiters who worked for Vaco LLC during the past three years (the "FLSA Collective").

(4) Appointing the undersigned as counsel for the FLSA Collective; and
(5) Giving members of the FLSA Collective sixty (60) days to join this case, measured from the date the Court-authorized notice is sent, with one reminder email sent thirty (30) days thereafter to anyone who did not respond.

(Doc. No. 38 at 1-2). Plaintiff has filed along with the Motion a Proposed Notice (Doc. No. 39-2) to send to members of the FLSA Collective via U.S. Mail and email. As shown by the Proposed Notice (Doc. No. 39-2), and as noted above, Plaintiff defines the FLSA Collective as "[a]ll current and former Recruiters who worked for Vaco LLC during the past three years." (Doc. No. 39-2 at 3). And as noted in a footnote above, the Court discerns that by using the phrase "past three years," Plaintiff means to define the FLSA Collective as being comprised of individuals who worked as Recruiters at Vaco LLC from three years prior to the date that the Complaint was filed to the date that the Complaint was filed—i.e., from December 1, 2020 to December 1, 2023 (the date that the Complaint was filed). As noted above, "Recruiters" are defined as any employee at Vaco LLC (i.e., Defendant) "with the job title of Associate, Senior Associate, Associate Director, Director, Senior Director, or Managing Director." (Doc. No. 39-2 at 3 n.1). Plaintiff has also filed a proposed

---

exempt based *solely* on their misclassification as administrative employees, and not on some other exemption or combination of exemptions.

text message (Doc. No. 39-3, "Proposed Text Message")—which the Court quotes further below in its analysis of Plaintiff's requested notice—to send to members of the FLSA Collective.

Plaintiff contends that the Motion should be granted because (in the words of the captions in its briefing) Defendant's "Blanket . . . Misclassification of its Recruiters as Exempt Demonstrates a 'Strong Likelihood' that All of Vaco's Recruiters are Similarly Situated to the named Plaintiff," (Doc. No. 39 at 9), and "Other Facts Clearly Demonstrate a 'Strong Likelihood' that All of Vaco's Recruiters are Similarly Situated to the named Plaintiff." (Doc. No. 39 at 10).

Defendant argues that notice is inappropriate here. First, Defendant contends that Plaintiff "has not met his burden of demonstrating a strong likelihood that he and other [R]ecruiters suffered from a single FLSA-violating policy or practice." (Doc. No. 40 at 6).[10] Defendant also argues that the proposed FLSA Collective is too broad because "it does not acknowledge the applicable highly compensated exemption" to the FLSA's requirement of overtime pay. (Doc. No. 40 at 24). Defendant also makes a handful of objections to the substance of Plaintiff's Proposed Notice and Proposed Text Message. (Doc. No. 40 at 26).

LEGAL STANDARD

"The FLSA requires employers to 'pay overtime to most employees who work more than 40 hours a week.'" *Geeo v. Bonded Filter Co., LLC*, No. 3:22-CV-00359, 2023 WL 8115526, at *1 (M.D. Tenn. Nov. 22, 2023) (quoting *Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 745 (6th Cir. 2019) (citing 29 U.S.C. § 207(a)(1))). The FLSA "permits employees alleging a violation of this provision to bring suit on their own behalf and that of 'other employees similarly

---

[10] This argument is, in effect, a merits-based argument, whereby Defendant asks the Court to consider whether Plaintiff is likely to succeed on his claim (by showing a violation of the FLSA). As Plaintiff recognized in his Reply (Doc. No. 43), such an argument is inappropriate to raise in response to the instant Motion for reasons that the Court will discuss below.

situated'" in a so-called "collective action."[11] *Geeo*, 2023 WL 8115526, at *1 (quoting 29 U.S.C. § 216(b)). Importantly, "[n]o employee shall be a party plaintiff to any [collective] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* (quoting 29 U.S.C. § 216(b)). Put another way, there are two requirements to join a collective action under the FLSA: "(1) the additional plaintiffs [(i.e., the other individuals in the proposed collective)] must 'actually be "similarly situated"' [to the named plaintiff]"; and (2) "they [i.e., members of the proposed collective] must 'signal in writing their affirmative consent to participate in the [collective] action.'" *Geoo*, 2023 WL 8115526, at *1 (quoting *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006)).

The Supreme Court has held that "district courts have discretion, in appropriate cases" to implement the FLSA "by facilitating notice to potential" members of an FLSA collective action. *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989). *See also Isaacs v. Landmark Recovery of Louisville, LLC*, No. 3:23-CV-00210, 2023 WL 6096730, at *8 (M.D. Tenn. Sept. 18, 2023) (discussing *Hoffman-LaRoche*).

As the Sixth Circuit has held, "for a district court to facilitate notice of an FLSA suit to other employees [in a proposed collective]"—which is precisely what the instant Motion seeks— "the plaintiffs must show a 'strong likelihood' that those employees [in the proposed collective] are similarly situated to the plaintiffs themselves." *Clark v. A&L Homecare and Training Ctr., LLC*, 68 F.4th 1003, 1011 (6th Cir. 2023).[12] "That standard requires a showing greater than the

---

[11] Herein, the Court will use the term "collective action" to refer to the actual action involving "similarly situated" employees under the FLSA, and the term "collective" to refer to the group of (purportedly) "similarly situated" employees itself.

[12] In *Clark*, the Sixth Circuit rejected both the seemingly well-established concept of "conditional certification," of an FLSA collective—a concept the Court need not and will not address herein—and the "fairly lenient" standard many district courts in this Circuit had previously applied to determine whether employees in a proposed collective were "similarly situated" to named plaintiffs such that they should be

one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id.* The Sixth Circuit analogized this standard to "a court's decision whether to grant a preliminary injunction"—namely to the standard a court imposes on a movant when considering whether a movant is likely to succeed on the merits of their claim. *Id.* at 1010.[13]

"After notice has issued, employees [in the collective] have opted-in to the collective action [by signaling their consent in writing to join the suit], and discovery has continued, the district court determines—not conditionally, but conclusively—whether the collective members"—i.e., those who have opted-in—"are in fact 'similarly situated' to the original plaintiffs." *Dorta v. SpecialtyCare, Inc.*, No. 3:23-CV-00892, 2024 WL 2164616, at *2 (M.D. Tenn. May 14, 2024) (citing *Clark*, 68 F.4th at 1010-11). At this stage, if the Court determines conclusively that the employees who have opted-in are in fact "similarly situated" to the named plaintiff(s), then these

---

treated as conditionally part of the collective (such that plaintiff's counsel could attempt contact them via court-authorized notice so as to solicit their participation in the lawsuit as part of the collective). *Clark*, 68 F.4th at 1008-1011.

[13] As noted in a footnote above, the Court's decision herein is based on an analysis of whether Plaintiff has mustered sufficient evidence to suggest that facts exist to support the Court finding that there is a strong likelihood that Plaintiff and members of the FLSA Collective are "similarly situated." *Cf., Walters*, 2026 WL 522856, at *2-4 (evaluating whether a plaintiff has satisfied its burden of showing a strong likelihood that he and other employees were similarly situated by considering the evidence plaintiff mustered); *Pack*, 2024 WL 6874231, at *4-5 (same). This decision naturally involves weighing the evidence that Defendant has mustered to consider whether that evidence suggests that facts exist that would support the Court *declining* to find a strong likelihood that Plaintiff and members of the FLSA Collective are "similarly situated." *Cf. Isaacs*, 2023 WL 6096730, at *12-13 (weighing plaintiff's and defendant's evidence and arguments in considering whether plaintiff met its burden of showing a strong likelihood that he and other employees were similarly situated). As also noted above, what the Court is *not* doing herein is making factual determinations or resolving factual disputes. *See e.g., Dorta v. SpecialtyCare, Inc.*, No. 3:23-CV-00892, 2024 WL 2164616, at *3 (M.D. Tenn. May 14, 2024) ("the Court's role at this stage, is not to 'consider the merits of the claims, resolve factual disputes, or decide substantive issues'" (quoting *Polen v. JSW Steel USA Ohio, Inc.*, No. 2:22-CV-00085, 2023 WL 6860399, at *6 (S.D. Ohio Oct. 18, 2023))). *See also Hogan v. Cleveland Ave Rest., Inc.*, 690 F. Supp. 3d 759, 776 (S.D. Ohio 2023) (same). Indeed, and as noted above, some of the (purported) facts stated herein (or stated in the parties' briefing on the Motion) have been purported to be true by one party and not conceded by the other party, and at this juncture, the Court will not resolve any of these disputes conclusively.

employees "become parties to the suit and can proceed to trial collectively." *Hogan v. Cleveland Ave Restaurant, Inc.*, 690 F. Supp. 3d 759, 772 (S.D. Ohio 2023).[14]

In other words, there is a two-step process at play here. First, the court determines whether notice is appropriate by considering whether plaintiffs have shown a strong likelihood that employees in the proposed collective are "similarly situated" to the plaintiffs themselves. Second, *if* notice is appropriate (in that plaintiffs have shown a strong likelihood that employees in a proposed collective are "similarly situated" to plaintiffs), then at some point after notice is issued the court determines conclusively whether the individuals that have opted-in to the collective action (whether or not they did so specifically in response to receiving the court-authorized notice)[15] are in fact "similarly situated" to the named plaintiffs themselves. *See Markle v. Senior Village Mgmt., LLC*, No. 2:22-CV-03420, 2024 WL 3489991, at *2 (S.D. Ohio July 18, 2024)

---

[14] There is an important caveat to this observation: to say that the claims proceed "collectively" is not to say that they proceed as a *class*. In fact, they do not, because a so-called 'collective" action under the FLSA is not a class action (a kind of action prescribed by Rule 23 of the Federal Rules of Civil Procedure and not by the FLSA), and opt-in plaintiffs become not members of a class in a class action, but rather parties in their own right—meaning that they have the status of plaintiff in the case to the same extent as does the named plaintiff who originally brought the case. *See Clark*, 68 F.4th at 1009. In other words, through the above-described process (involving the provision of notice and the opting-in of plaintiffs), opt-in plaintiffs are *joined* (individually) as plaintiffs.

But of course the Federal Rules of Civil Procedure already allow for (or even require) joinder of multiple plaintiffs in a single action under particular prescribed circumstances. *See* Fed. R. Civ. P. 19(a)(1), 20(a)(1)-(2). So that begs the question: why would a named plaintiff (and his or her counsel) go through the above-described process for joinder under the FLSA? The answer appears two-fold. First, that process (unlike Rule 19 or Rule 20) contemplates *court-authorized notice* to potential opt-in plaintiffs (i.e., persons potentially to be joined as plaintiffs), which is obviously a major advantage to any plaintiff (or plaintiff's counsel) that wants to maximize (or at least increase) the number of persons joined as plaintiffs. Second, the FLSA provides an additional basis for joinder of multiple persons as plaintiffs—*i.e.,* a basis for joinder not contemplated by Rule 19 or Rule 20—namely, joinder based on their having been "similarly situated" employees of the defendant.

One final point regarding *Hogan*'s observations that the claims proceed to trial "collectively": that is not to say that the action is appropriately called a "collective action," and in fact the Sixth Circuit has thrown shade on the use of that term. *See Clark*, 68 F.4th at 1009.

[15] Notably, a person can opt in as a plaintiff prior to, or otherwise independent or irrespective of, any receipt of court-authorized notice.

(discussing the two-step process at issue with respect to FLSA collective actions and noting that the "final certification hurdle" (i.e., the second step) is "more stringent" than the notice step (i.e., the first step)).[16] *See also Hogan*, 690 F. Supp. 3d at 772 (describing the two-step process).

In considering whether employees in a proposed collective are "similarly situated" for purposes of the FLSA, courts in this Circuit look to three non-exhaustive factors. *See Isaacs*, 2023 WL 6096730, at *10. These are:

> (1) the "factual and employment settings of [the named plaintiffs and the members of the collective]"; (2) "the different defenses to which the [named plaintiffs and the members of the collective] may be subject on an individual basis"; and (3) "the degree of fairness and procedural impact of certifying the action as a collective action."

*Id.* (quoting *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017)). *See also Geeo*, 2023 WL 8115526, at *2 (same); *Monroe*, 860 F.3d at 401-05 (considering these three factors). As relevant to the first factor above, the Sixth Circuit has explained that "[w]hether other employees [in a proposed collective] are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were." *Clark*, 68 F.4th at 1010

---

[16] The Sixth Circuit would not be keen on the use of the word "certification" in *Markle*. *See Clark*, 68 F.4th 1009 ("[T]he term 'certification' has no place in FLSA actions."). The distaste for that term is understandable. As a district court in this Circuit has noted in cogent fashion:

> Courts have coined this a "notice determination" as opposed to a "conditional certification," *Hogan*, 690 F.Supp.3d at 772, as this preliminary similarly situated determination "has zero effect on the character of the underlying suit," but acts as a green light for the sending of court-approved written notice to employees. *Clark*, 68 F.4th at 1009. In this way, the focus is properly shifted away from whether a group of plaintiffs should, substantively, become parties to the FLSA suit, and back toward the court's facilitation of awareness to those who could choose to opt-in. *See id.* This focus is important because, "[of] course, a [similarly situated employee] can join [a FLSA action] only if they are aware of the suit in the first place." *Polen v. JSW Steel USA Ohio, Inc.*, 699 F. Supp. 3d at 627.

*Albert v. Honda Dev. & Mfg. of Am., LLC*, 752 F. Supp. 3d 869, 877 (S.D. Ohio 2024).

(citing *Pierce*, 922 F.3d at 745-46). In addition to relying on these three factors, courts have also held that employees in a proposed collective are likely "similarly situated" to the named plaintiff if "they suffered from 'a single, FLSA-violating policy' instituted by the employer defendant, or if their 'claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct.'" *Isaacs*, 2023 WL 6096730, at *10 (quoting *Monroe*, 860 F.3d at 398).

Two preliminary observations bear mentioning. First, no single factor is determinative of a court's analysis as to whether named plaintiffs and members of a proposed collective are "similarly situated." *See e.g., Hogan*, 690 F. Supp. 3d at 773; *Polen v. JSW Steel USA Ohio, Inc.*, 699 F. Supp. 3d 622, 628 (S.D. Ohio 2023).

Second, and perhaps more importantly, the Court will *not*—at this juncture and faced with this particular type of motion (i.e., a motion for court-authorized notice)—consider the merits of Plaintiff's claim. That is, the Court will not consider whether Plaintiff is likely to *succeed* on the merits of his claim. *See e.g., Dorta*, 2024 WL 2164616, at *3 ("At the notice stage, the court 'does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.'" (quoting *Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742, 747 (M.D. Tenn. 2018))); *Isaacs*, 2023 WL 6096730, at *13 (noting that the *Clark* standard "notably, does not apply (at this juncture) to the *merits* of the plaintiff's claim, but only to the "similarly situated" requirement."). The Court here is to consider not whether Plaintiff (or others) are likely to *succeed on the merits* of the underlying FLSA claims, but rather whether Plaintiff and those persons are "strong[ly] likel[y]" to ultimately be found "similarly situated" to each other with respect to the

claims at issue.[17] The distinction that the Court draws here is supported by the *Clark* decision's elucidation of the purpose of the "similarly situated" inquiry:

> The very point of the "similarly situated" inquiry is to determine whether the merits of other-employee claims would be similar to the merits of the original plaintiffs' claims—so that collective litigation would yield "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffmann-La Roche*, 493 U.S. at 170.

*Clark*, 68 F.4th at 1012. True, the Sixth Circuit in *Clark*—in the context of examining whether court-authorized notice was proper—held that it was proper for the district court to consider whether members of a proposed collective would be subject to certain defenses (founded, in *Clark*, on an arbitration agreement). *Clark*, 68 F.4th at 1011-12. But the consideration approved by that holding was a consideration not of whether the defenses would be meritorious, but rather a consideration of the extent to which the defenses (be they ultimately meritorious or unmeritorious) would be shared by the named plaintiffs and the members of a proposed collective (and thereby support the notion that they were "*similarly situated*" to one another). Put another way—the Sixth Circuit held not that it was proper for a district court to consider whether any claims were *likely to be subject to dismissal* based on a particular defense to which the named plaintiffs were subject, but rather that it was proper for the district court to consider the extent to which the claims of (potentially) "similarly situated" employees would be subject to that defense (thereby strengthening the argument that those employees were in fact "similarly situated" to the named plaintiffs). The consideration of potential defenses by the Sixth Circuit in such a manner is consistent with the second of the factors that courts regularly consider when evaluating whether

---

[17] Notably, in considering that question, the Court considers (i) the evidence mustered by the parties and the facts that that evidence suggests exist (consistent with the three-step approach elucidated by the Court in two footnotes above); and (ii) the *nature* (as opposed to the merits) of the claims of Plaintiff and of the persons (potentially) in the proposed collective (the FLSA Collective).

members of a collective are "similarly situated" to named plaintiffs: the different defenses to which the named plaintiffs and the members of the collective may be subject on an individual basis.

In other words, the Court will eschew an analysis herein of whether any plaintiff (or potential plaintiff) in this action is likely to succeed on the merits of any claim (i.e., whether they are likely to succeed in showing that Defendant violated the FLSA), and instead will consider whether the claims of members of the FLSA Collective that Plaintiff has proposed are in fact similar to the claim of Plaintiff. The Court is well supported in embarking on such a course. *See e.g., Dorta*, 2024 WL 2164616, at *3 ("At the notice stage, the court 'does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.'" (quoting *Crosby*, 348 F. Supp. 3d at 747)); *Isaacs*, 2023 WL 6096730, at *13 (noting that the *Clark* standard "notably, does not apply (at this juncture) to the *merits* of the plaintiff's claim, but only to the "similarly situated" requirement."); *Bunger v. Surge Staffing, LLC*, No. 2:23-CV-2113, 2024 WL 2858699, at *4 (S.D. Ohio June 6, 2024) ("Courts typically do not consider merit-based arguments or resolve factual disputes at the notice stage . . . The critical determination at this stage is whether there is a sufficient showing of similarity to permit notice to others"); *Polen*, 699 F. Supp. 3d at 630 ("the Court's role at this [notice] stage, is not to 'consider the merits of the claims, resolve factual disputes, or decide substantive issues.").[18]

---

[18] To the extent that Defendant relies on *Geeo v. Bonded Filter Co., LLC*, No. 3:22-CV-00359, 2023 WL 8115526 (M.D. Tenn. Nov. 22, 2023) for the argument that the Court should consider whether Plaintiff is likely to succeed on the merits of his FLSA claim, (Doc. No. 40 at 5-6), such reliance is unavailing. In *Geeo*, Judge Trauger considered whether to permit court-authorized notice to (potentially) "similarly situated" employees in an FLSA suit. In *Geeo*, Judge Trauger concluded that such notice was not justified because:

> The plaintiff, in short, has not shown that he and [] other [employees] suffered from a "a single, FLSA-violating policy" or that their "claims [are] unified by common theories of [BFC's] statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 398 (6th Cir. 2017) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584-85 (6th Cir. 2009); *see also Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 745 (6th Cir.

The Court next turns to an analysis of the instant Motion and the briefing thereon. The Court will consider whether court-authorized notice is appropriate as a threshold matter and, if so, whether Plaintiff's form of proposed notice is proper. The Court will also separately address Plaintiff's request to have his counsel appointed as counsel for the FLSA Collective.

1. Whether Court-Authorized Notice is Justified

As noted above, in considering whether employees in a proposed collective are "similarly situated" to a named plaintiff under the FLSA (so as to warrant court-authorized notice), courts in this Circuit look to three non-exhaustive factors. *See Isaacs*, 2023 WL 6096730, at *10. These are:

> (1) the "factual and employment settings of [the named plaintiffs and the members of the collective]"; (2) "the different defenses to which the [named plaintiffs and the members of the collective] may be subject on an individual basis"; and (3) "the degree of fairness and procedural impact of certifying the action as a collective action."

*Id.* (quoting *Monroe*, 860 F.3d at 397). As applicable to the first factor above, "[w]hether other employees [in a proposed collective] are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were." *Clark*, 68

---

2019). Nor has he shown the existence of a *de facto* policy of circumventing the FLSA. *Fenley v. Wood Group Mustang, Inc.*, 325 F.R.D. 232, 242 (S.D. Ohio 2018). Consequently, he has not established that "collective litigation would yield 'efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity. *Clark*, 68 F.4th at 1012 (quoting *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989)).

*Geeo*, 2023 WL 8115526, at *11. Yet, in *Geeo* Judge Trauger was careful to note that her conclusion was not based on whether the plaintiff would ultimately succeed on his claims, noting that "the court is not making a determination based on the evidence now in the record that [plaintiff's] individual FLSA claims will necessarily fail as a matter of law," and further stating that the court's conclusion is that "the plaintiff has failed to establish that there *are similarly situated employees* who have suffered an FLSA violation and would join this lawsuit if given notice of it." *Id.* at *10-11 (emphasis added). So, *Geeo* does not support the Court conducting an analysis of the likelihood of success that Plaintiff has on the merits of his claim in this action.

F.4th at 1010 (citing *Pierce*, 922 F.3d at 745-46). And another consideration—one that seemingly is untethered to these three factors—is that other employees in a proposed collective are likely "similarly situated" if "they suffered from 'a single, FLSA-violating policy' instituted by the employer defendant, or if their 'claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct.'" *Isaacs*, 2023 WL 6096730, at *10 (quoting *Monroe*, 860 F.3d at 398).

The Court will assess the two sides' respective arguments in turn.

### a. Plaintiff's Arguments

Plaintiff first argues that court-authorized notice is appropriate:

> because the underlying basis for Plaintiff's FLSA claim is that [Defendant] misclassified its Recruiters as exempt under the FLSA, Vaco's blanket misclassification of it[s] Recruiters as exempt weighs in favor of finding them "similarly situated" under a "unified policy, plan, or scheme."

(Doc. No. 39 at 9). This argument is well-taken. Indeed, as Defendant's 30(b)(6) deponent, Babette Stewart, confirmed, "[a]ll of the recruiters at the company are [classified] as exempt [under the FLSA]." (Doc. No. 39-5 at 35:2-17). Put another way, Plaintiff has mustered evidence to suggest that Plaintiff and the members of the FLSA Collective have claims that are "unified by common theories of defendants' statutory violations," *Isaacs*, 2023 WL 6096730, at *10, insofar as these claims are (or will likely be) based on the (alleged) misclassification of Plaintiff and the members of the FLSA Collective as exempt (and thus not entitled to overtime) under the FLSA. This evidence (and the facts that this evidence suggests exist) weigh in favor of the Court finding that there is a strong likelihood Plaintiff and members of the FLSA are "similarly situated" so as to justify the Court granting Plaintiff's request for court-authorized notice.

Likewise, Plaintiff has mustered evidence to suggest that Plaintiff and the members of the FLSA Collective have similar "factual and employment settings." *Isaacs*, 2023 WL 6096730, at

*10. First, the record indicates that the Recruiters, "regardless of job title or office location, share[] common duties and responsibilities." (Doc. No. 39 at 12 (citing Doc. Nos. 39-15; 39-16)). The record further indicates that, "[t]he ultimate goal, and primary job function of all Recruiters, was to find an ideal candidate to match a client's job order." (Doc. 39 at 13 (citing Doc. No. 39-6 at 110:15-19; Doc. No. 39-5 at 30:12-23, 31:7-22)). What's more, Defendant concedes—albeit only for purposes of its Response—that "all Recruiters at [Defendant] had similar job duties." (Doc. No. 40 at 20).

Further, and as Plaintiff argues, evidence suggests that Defendant "paid all of its Recruiters on a salary basis with a commission schedule, pursuant to a form employment agreement," (Doc. No. 39 at 14 (citing Doc. No. 39-5 at 77:8-14; Doc. No. 39-8 at 3-6)), even if Recruiters' "exact salary and commission style were somewhat variable." (Doc. No. 39 at 14). Finally, and as Plaintiff also contends, there is evidence to suggest that all of Defendant's Recruiters—i.e., the members of the FLSA Collective and Plaintiff—were subject to common policies, practices and training (Doc. No. 39 at 15-17), including through the so-called "Vacology" program, which appears to be/have been an internal training program available to all Recruiters. (Doc. No. 39 at 15 (citing Doc. No. 39-5 at 37:7-16, 53:17-54:11; Doc. No. 39-4 at 106:4-9)). Taking together the arguments and evidentiary support laid out above, the Court finds that Plaintiff has mustered evidence evincing similarities in the "factual and employment settings," *Isaacs*, 2023 WL 6096730, at *10, of Plaintiff and the members of the FLSA Collective. This evidence (and the facts this evidence suggests exist) weigh in favor of the Court finding that there is a strong likelihood that Plaintiff and members of the FLSA are "similarly situated" so as to justify the Court granting Plaintiff's request for court-authorized notice to members of the FLSA Collective. *Clark*, 68 F.4th at 1010 ("Whether other employees are similarly situated for the purpose of joining an FLSA suit typically

depends on whether they performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were."). Nevertheless, Defendant has raised certain arguments that cut against this finding and that the Court will consider below.

### b. Defendant's Arguments

For the most part, Defendant in its Response has raised arguments that are inapplicable to the instant Motion—namely, arguments that go the merits of the claims before the Court, i.e., go to whether Plaintiff (or other members of the FLSA Collective) can actually succeed in showing a violation of the FLSA. Specifically, Defendant argues extensively as to why Plaintiff cannot show that he and other members of the FLSA Collective were *not* exempt from the FLSA and that this precludes the Court from granting Plaintiff's request for court-authorized notice. (Doc. No. 40 at 6-23). At bottom, however, and for the reasons that the Court has explained at length above, such merits-based arguments are not appropriate at this stage of the instant action, when the Court is considering whether to permit court-authorized notice. But the Court will assess Defendant's other arguments, such as they are.

Defendant asserts that the proposed FLSA Collective is "too broad." (Doc. No. 40 at 23). Defendant specifically argues that the proposed FLSA Collective is too broad because:

> it does not acknowledge the applicable highly compensated exemption. Under 29 C.F.R. § 541.601(a), "an employee shall be exempt under section 13(a)(1) of the Act if the employee receives total annual compensation of not less than the amount set forth in paragraph (a)(1) through (4) of this section, and the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative, or professional employee . . . ." Before July 1, 2024, the total annual compensation threshold was $107,432 per year, including at least $684 per week, or $35,568 per year, paid on a salary basis. 29 C.F.R. § 541.601(a) (June 8, 2020 version). On July 1, 2024, that total annual threshold level changed to $132,964, including at least $844 per week, or $43,888 per year, paid on a salary basis. (*Id.*) The total annual compensation includes salary as well as commissions, nondiscretionary bonuses, and "other nondiscretionary compensation." *Id.* § 541.601(b).

> In 2021, Vaco had 69 "Recruiters," using Plaintiff's definition, who earned more than $107,432 annualized in total compensation in 2021, 100 in 2022, and 108 in 2023, the three complete years before any notice from Plaintiff would be sent out. (Declaration of Babette Stewart ("Stewart Decl."), ¶¶ 5-6 (attached as Ex. 4).) Through June 30, 2024, 91 of the total number of employees within Plaintiff's definition of "Recruiter" are on pace to ultimately make more than
>
> All of these Recruiters, either those earning more than $107,432 in 2021, 2022, and 2023, or more than $132,964 in 2024, are exempt under the highly compensated exemption. Under that exemption, the employees do not have to exercise discretion and independent judgment on matters of significance at all, which is the one element of the administrative exemption Plaintiff disputes. All the Recruiters have to do is customarily and regularly perform one of the exempt duties of an administratively exempt employee. See 29 C.F.R. § 541.601(c). Therefore, Recruiters with those earnings thresholds are exempt under the highly compensated exemption when they meet the administrative exemption's second element, which Plaintiff does not contest.
>
> In addition to Plaintiff's proposed class not acknowledging the highly compensated exemption, Plaintiff does not include that the Recruiter must have worked more than 40 hours in a workweek to be eligible to receive overtime, assuming arguendo they were misclassified as exempt (which Vaco disputes, as set forth above). 29 U.S.C. § 207(a).

(Doc. No. 40 at 24-25). Assuming arguendo that the factual contentions asserted by Defendant are supported by the record, Defendant's argument here is effectively that some members of the FLSA Collective will be subject to certain individualized defenses—namely the defense that they are exempt from the FLSA's overtime requirements based on their compensation pursuant to 29 C.F.R. § 541.601 or that they did not work sufficient hours so as to be eligible for overtime pay— to which Plaintiff would not be subject (for reasons the Court need not delve into herein) and are thus not "similarly situated" to the named Plaintiff. Defendant's argument does lend support to the notion that Plaintiff and members of the FLSA Collective are not "similarly situated," *see e.g., Isaacs*, 2023 WL 6096730, at *10 (courts consider "the different defenses to which the [named plaintiffs and the members of the collective] may be subject on an individual basis" in considering the "similarly situated" inquiry), but Defendant's argument does not *compel* the Court to find that

Plaintiff has failed to meet his burden of showing a strong likelihood that he and members of the FLSA Collective are "similarly situated." *See e.g., Hogan*, 690 F. Supp. 3d at 773 (noting that no one factor is dispositive in a court's analysis of whether employees in a proposed collective are "similarly situated" under the FLSA); *Polen*, 699 F. Supp. 3d at 628 (same). And indeed, this argument does not persuade the Court to depart from its finding that Plaintiff has mustered sufficient evidence to suggest that facts exist to support the Court finding that there is a strong likelihood that Plaintiff and members of the FLSA are "similarly situated" so as to support court-authorized notice—a finding that the Court made because of the Court's previous findings that Plaintiff has mustered evidence to suggest that he and the members of the FLSA Collective likely have claims that are "unified by common theories of defendants' statutory violations,'" *Isaacs*, 2023 WL 6096730, at *10 (insofar as their claims are based on whether they were improperly classified as exempt under the FLSA) and that Plaintiff has mustered evidence to suggest that he and members of the FLSA Collective have strong similarities in "factual and employment settings," *id.* at *10, given their (apparent) similar job responsibilities and compensation structures (i.e., being paid through similar commission/salary structures, even if ultimate compensation varies).

To put it another way, the Court finds that Plaintiff has satisfied his burden of showing a "'strong likelihood' that those employees [in the proposed collective] are similarly situated to the plaintiffs themselves." *Clark*, 68 F.4th at 1011.[19] Thus, the Court will grant Plaintiff's request for court-authorized notice to the FLSA Collective—that is notice to individuals who have worked as Recruiters at Vaco LLC from three years prior to the date that the Complaint was filed to the date

---

[19] Some courts also consider whether a named plaintiff—like Plaintiff—has submitted affidavits from opt-in plaintiffs. *Markle*, 2024 WL 348991, at *3. Consideration of such factor here also supports granting Plaintiff's Motion given that Plaintiff has submitted five affidavits from five individuals who have opted in to this suit. (Doc. Nos. 39-19; 39-21; 39-22; 39-23; 39-25).

the Complaint was filed (e.g., from December 1, 2020 to December 1, 2023 (the date that the Complaint was filed)). The Court will next turn to analyzing the form and substance of Plaintiff's requested notice, and whether this form and substance are proper.

2. <u>Plaintiff's Request for the Appointment of Counsel for the FLSA Collective</u>

The Court will next address Plaintiff's request, made in the Motion, for his counsel to be appointed as counsel for the FLSA Collective. (Doc. No. 38 at 1). Given that this action is a (putative) FLSA collective action, such a request is improper, not just at this particular juncture of the action, but in general. Indeed, in *Clark* the Sixth Circuit explicitly noted that "an FLSA collective action is *not representative*." *Clark*, 68 F.4th at 1009. As the Sixth Circuit then explained, "in contrast to members of a Rule 23 class—similarly situated employees who join an FLSA action become parties with the same status in relation to the claims of the lawsuit as do the named plaintiffs." *Id.* at 1009 (internal citations and quotation marks omitted). And further, in a pre-*Clark* case, but one that the Sixth Circuit cited approvingly in *Clark*, the Sixth Circuit noted, contrasting Rule 23 class actions with FLSA collective actions:

> Rule 23 classes must be represented by "class counsel," Fed. R. Civ. P. 23(g), while opt-in plaintiffs in an FLSA collective action have "the right to select counsel of [their] own choosing," *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1073 (S.D. Ohio 2016). With this option of separate counsel, collective actions permit individualized claims and individualized defenses, "in which aggrieved workers act as a collective of individual plaintiffs with individual cases." *Campbell*, 903 F.3d at 1105.

*Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 403 (6th Cir. 2021). In other words, for the Court to appoint counsel on behalf of the proposed FLSA Collective would be for the Court to misapprehend not just the scope of the task before it with respect to the instant Motion—which is, of course, merely to consider whether it is proper to facilitate *notice* to employees (i.e., the FLSA Collective) that may be similarly situated to Plaintiff—but also to misapprehend the concept and

purpose of an FLSA collective action, and indeed to undercut the right of all opt-in plaintiffs in FLSA collective actions to select their own counsel. None of this is to say that *members* of the FLSA Collective *individually* may not choose to be represented by Plaintiff's counsel, but it is not the Court's role to make that choice for them.[20]

3. <u>Whether Plaintiff's Requested Form of Notice is Proper</u>

With respect to the content of Plaintiff's requested notice, the Court notes (again) that Plaintiff seeks an order:

> (1) Permitting Plaintiff to send notice to the proposed FLSA Collective;
> (2) Requiring Defendant to identify all putative FLSA Collective members by providing a list of their names, last known addresses, dates and location of employment, phone numbers, and email addresses in electronic and importable format within ten (10) days of the entry of the order;
> (3) Authorizing Plaintiff's proposed form of notice (Exhibits A & B) and implementing a procedure whereby the notice of Plaintiff's FLSA claim is sent (via U.S. Mail, email, and text message) to:
> > All current and former Recruiters who worked for Vaco LLC during the past three years (the "FLSA Collective").
> (4) Appointing the undersigned as counsel for the FLSA Collective; and
> (5) Giving members of the FLSA Collective sixty (60) days to join this case, measured from the date the Court-authorized notice is sent, with one reminder email sent thirty (30) days thereafter to anyone who did not respond.

(Doc. No. 38 at 1-2). Plaintiff has filed along with the Motion a Proposed Notice (Doc. No. 39-2) to send to members of the FLSA Collective via U.S. Mail and email. As shown by the Proposed Notice (Doc. No. 39-2) and as noted above, Plaintiff defines the FLSA Collective as "All current and former Recruiters who worked for Vaco LLC during the past three years." (Doc. No. 39-2 at 3). And as noted in a footnote above, the Court discerns that by using the phrase "past three years," Plaintiff means to refer to individuals who have worked as Recruiters at Vaco LLC from three years prior to the date that the Complaint was filed to the date that the Complaint was filed—that

---

[20] And indeed, to the extent that Plaintiff's counsel purports to represent multiple members of the FLSA Collective, Plaintiff's counsel is advised of the need to keep abreast of potential conflicts of interest that may emerge within that representation.

is from December 1, 2020 to December 1, 2023 (the date that the Complaint was filed). "Recruiters" is defined, as the Court has already noted, as any employee at Vaco LLC (i.e., Defendant) "with the job title of Associate, Senior Associate, Associate Director, Director, Senior Director, or Managing Director." (Doc. No. 39-2 at 3 n.1).

Plaintiff has also filed a proposed text message (Doc. No. 39-3, "Proposed Text Message") to send to members of the FLSA Collective that reads:

> Attention all current and former Recruiters who worked for Vaco LLC during the past three years. You are eligible to join a pending collective action lawsuit against Vaco LLC ("Defendant") which seeks to recover unpaid overtime wages that are owed to you. You were sent, via U.S. mail and email (to your latest address on file with Defendant), a detailed NOTICE explaining your legal rights. It is highly recommended that you check your email and mailing address for this NOTICE and read it carefully so you can make an informed decision. If you need another copy sent to you, please contact the attorney appointed by the court to serve as counsel for the agents:
>
> Jesse L. Young
> Sommers Schwartz, P.C.
> 141 E. Michigan Ave., Ste. 600, Kalamazoo, Michigan 49007
> Telephone: 269-250-7500
> jyoung@sommerspc.com
>
> Paulina R. Kennedy
> Sommers Schwartz, P.C.
> One Towne Square, 17th Floor, Southfield, Michigan 48076
> Telephone: 248-355-0300
> pkennedy@sommerspc.com
>
> Jonathan Melmed
> Laura Supanich
> Melmed Law Group, P.C.
> 1801 Century Park East, Suite 850, Los Angeles, CA 90067
> (310) 824-3828
> jm@melmedlaw.com
> lms@melmedlaw.com.

(Doc. No. 39-3).

As an initial matter, the Court notes that the contemplated *means of* Plaintiff's requested court-authorized notice—email and U.S. Mail (for sending the Proposed Notice) and text message

(for sending the Proposed Text Message)—are ones commonly employed in FLSA suits. *See Isaacs*, 2023 WL 6096730, at *16 (authorizing notice by text message, email and U.S. Mail); *Torres v. Vitale's Italian Rest., Inc.*, 2020 WL 6321481, *17 (W.D. Mich. Sept. 30, 2020) (approving notice "via traditional mail, email, text, and/or social media"). Moreover, the timing parameters underlying the requested notice—namely an opt-in period of sixty days (from when the notice is sent) for members of the FLSA Collective to join this litigation, and a reminder to be sent by email to members of the FLSA Collective thirty days into the sixty-day period—are each common features in cases like this one. *Isaacs*, 2023 WL 6096730, at *16 (approving 60-day opt-in period); *Dorta*, 2024 WL 2164616 at *3 ("Courts within the Sixth Circuit have routinely approved . . . reminder notices."). Finally, Plaintiff's request that the Court order Defendant to "identify all putative FLSA Collective members by providing a list of their names, last known addresses, dates and location of employment, phone numbers, and email addresses in electronic and importable format within ten (10) days of the entry of the order," (Doc. No. 38 at 1), is similar to requests for contact information of members of a collective that are frequently granted when a court permits court-authorized notice. *See e.g., Simpson v. Adena Health System*, No. 2:23-cv-02633, 2024 WL 3418137, at *6 (S.D. Oh. July 15, 2024) (ordering production of spreadsheet containing "full names, dates of employment, locations worked, job titles, last known mailing addresses, personal email addresses, and cellular phone numbers" of individuals in proposed collective); *Crook v. PJ Operations, LLC*, No. 5:21-321-KKC, 2024 WL 1048136, at *6-7 (E.D. Ky. Mar. 11, 2024) (ordering production of "names, last-known mailing addresses and e-mail addresses, last four digits of the social security number, dates of birth, and driver's license numbers of all potential opt-in plaintiffs"). Notably, Defendant takes no issue with any of these particular elements of Plaintiff's requested notice, and the Court finds that they are proper.

The Court will now turn to the substance of the Proposed Notice and Proposed Text Message. When evaluating Plaintiff's Proposed Notice and Proposed Text Message, the Court is guided by the well-established precept that a "[n]otice to putative FLSA collective action class members must be '[a]ccurate,' should not 'cause confusion,' and should be crafted so as 'to avoid any misunderstanding . . . as to the status of the lawsuit.'" *Hardesty v. Kroger Co.*, No. 1:16-CV-298, 2016 WL 3906236, at *1 (S.D. Ohio July 19, 2016) (quoting *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio 2011)). *See also Dorta*, 2024 WL 2164616, at *3 (considering whether a proposed notice is "timely, accurate, and informative" as required)).

Plaintiff and Defendant seem to agree largely on the substance of the Proposed Notice and the Proposed Text Message. Indeed, Defendant takes issue with only two specific aspects of the substance of Plaintiff's requested notice. First, Defendant takes issue with the "Description of the Lawsuit" section in the Proposed Notice. As proposed by Plaintiff, this section reads:

> Plaintiff Gabriel Montenegro ("Plaintiff") filed this action against Vaco LLC ("Defendant") and alleges that Defendant failed to properly classify recruiter employees as non-exempt from the overtime provisions of the FLSA.

> Plaintiff alleges that he and all other hourly employees were/are entitled to unpaid overtime wages for the past three years, liquidated (double) damages, plus attorneys' fees and litigation expenses associated with bringing this lawsuit.

> Defendant denies Plaintiff's allegations and denies that its hourly employees are entitled to any relief or damages.

(Doc. No. 39-2 at 2). Given that this is a case based on Defendant's (alleged) misclassification of Recruiters as exempt under the FLSA, Defendant proposes adding an additional sentence to the end of the last paragraph of the "Description of the Lawsuit" section: "Vaco contends that it properly classified its salaried Recruiters as ineligible to receive overtime." (Doc. No. 40 at 26). This proposal is well-taken, and given that Plaintiff in his Reply has not indicated any objection to

this proposal, Plaintiff shall revise the "Description of the Lawsuit" section of his Proposed Notice to read as follows, with modifications (additions) in bold:

> Plaintiff Gabriel Montenegro ("Plaintiff") filed this action against Vaco LLC ("Defendant") and alleges that Defendant failed to properly classify recruiter employees as non-exempt from the overtime provisions of the FLSA.

> Plaintiff alleges that he and all other hourly employees were/are entitled to unpaid overtime wages for the past three years, liquidated (double) damages, plus attorneys' fees and litigation expenses associated with bringing this lawsuit.

> Defendant denies Plaintiff's allegations and denies that its hourly employees are entitled to any relief or damages. **Defendant contends that it properly classified its salaried Recruiters as ineligible to receive overtime.**

Defendant also takes issue with the language of the Proposed Text Message. Specifically, Defendant argues that although the Proposed Text Message "states that this lawsuit 'seeks to recover unpaid overtime wages that are owed to you.' . . . [t]his is misleading because it heavily implies that money is in fact 'owed' to the employee, when no such determination has been made." (Doc. No. 40 at 26). This objection is well-taken, given that "[n]otice to putative FLSA collective action class members must be '[a]ccurate,' should not 'cause confusion,' and should be crafted so as 'to avoid any misunderstanding . . . as to the status of the lawsuit,'" *Hardesty*, 2016 WL 3906236, at *1, and given that Plaintiff has not indicated any opposition to Defendant's objection, the Proposed Text Message shall be revised to read as follows, with modifications (additions) in bold:

> Attention all current and former Recruiters who worked for Vaco LLC during the past three years. You are eligible to join a pending collective action lawsuit against Vaco LLC ("Defendant") which seeks to recover unpaid overtime wages that **may be** owed to you. You were sent, via U.S. mail and email (to your latest address on file with Defendant), a detailed NOTICE explaining your legal rights. It is highly recommended that you check your email and mailing address for this NOTICE and read it carefully so you can make an informed decision. If you need another copy sent to you, please contact the attorney appointed by the court to serve as counsel for the agents:
>
> Jesse L. Young

Sommers Schwartz, P.C.
141 E. Michigan Ave., Ste. 600, Kalamazoo, Michigan 49007
Telephone: 269-250-7500
jyoung@sommerspc.com

Paulina R. Kennedy
Sommers Schwartz, P.C.
One Towne Square, 17th Floor, Southfield, Michigan 48076
Telephone: 248-355-0300
pkennedy@sommerspc.com

Jonathan Melmed
Laura Supanich
Melmed Law Group, P.C.
1801 Century Park East, Suite 850, Los Angeles, CA 90067
(310) 824-3828
jm@melmedlaw.com
lms@melmedlaw.com.

In addition, there are other, more serious deficiencies that the Court on its own has identified with respect to the Proposed Notice and Proposed Text Message. The Court notes that the Proposed Notice refers at times to Plaintiff's counsel serving as counsel for the *FLSA Collective*. (Doc. No. 39-2 at 4, 8). In line with the analysis above noting why it would be improper to appoint Plaintiff's counsel as counsel for the FLSA Collective, the Court concludes this language is inappropriate and misleading. Moreover, the Proposed Notice states to potential opt-in plaintiffs that "[i]f you choose to join this lawsuit, [Plaintiff's counsel] will represent you unless you obtain your own attorney to file your own *separate case*." (Doc. No. 39-2 at 4 (emphasis added)). This statement is plainly inaccurate. Indeed, opt-in plaintiffs in FLSA collective actions are certainly permitted the right to select their own counsel without having to file an *entirely separate* lawsuit. *Cf. Canaday*, 9 F.4th at 403 ("[O]pt-in plaintiffs in an FLSA collective action have the right to select counsel of [their] own choosing. [Thus], collective actions permit individualized claims and individualized defenses, in which aggrieved workers act as a collective

of individual plaintiffs with individual cases." (internal quotation marks and citations omitted)). Further, the Proposed Notice includes a provision that states:

> By joining this lawsuit, you are designating the attorneys identified in Section 7 to represent your interest. In addition, you agree that the Plaintiff may make decisions on your behalf regarding this lawsuit, including the manner and method of conducting the suit. If you elect to voluntarily join this lawsuit, you are designating the Plaintiff as your agent to make decisions on your behalf in this lawsuit and agreeing that the decisions and agreements made by the Plaintiff will be binding on you.

(Doc. No. 39-2 at 4). Consistent with the what the Court has stated earlier, this provision is plainly improper because opt-in plaintiffs have the right to select their own counsel and to act as *individual* plaintiffs (joined with other individual plaintiffs) in an FLSA collective action. Further, this provision would transform this (putative) FLSA collective action into a representative suit, like a Rule 23 class action—something the Sixth Circuit unequivocally has stated is improper. *Clark*, 68 F.4th at 1009.

What's more, the (sole) proposed consent-to-join form (Doc. No. 39-2 at 7-8) included in the Proposed Notice, which is located at the end of the Proposed Notice, permits a potential opt-in plaintiff to join this suit *only* if they agree to be represented by Plaintiff's counsel, includes allusions to Plaintiff's counsel acting as "class counsel," states to opt-in plaintiffs that "[u]nless you retain other legal counsel, at your own expense, *you will be represented* in this class / collective action lawsuit by the Sommers Schwartz, P.C. ("class counsel")," and buries in small print a notice to opt-in plaintiffs that they may choose to be represented by their own counsel. (*Id.*(emphasis added)). This is improper. The proposed notice must include a consent-to-join form that permits opt-in plaintiffs to opt-in to this suit *without* selecting Plaintiff's counsel as their attorneys. Moreover, any consent-to-join form should not include any discussion of Plaintiff's counsel serving as a class (or collective) counsel, or contain any intimation to opt-in plaintiffs that they

will be *forced* to be represented by Plaintiff's counsel if they do not obtain other representation. Furthermore, any proposed consent-to-join form should not bury in small print a notice to opt-in plaintiffs that they may choose to be represented by their own counsel.

Furthermore, the Proposed Text Message refers to Plaintiff's counsel as having been "appointed by the court to serve as counsel for the agent" (Doc. No. 39-3 at 2), indicating that the Court has appointed Plaintiff's counsel as an "agent" of the opt-in plaintiffs. For the reasons already stated above, this is inaccurate.

For these reasons, the Court cannot permit Plaintiff to send notice in the form it has proposed in the Proposed Notice and Proposed Text Message. Before Plaintiff is permitted to send notice to members of the FLSA Collective, Plaintiff must rectify the deficiencies identified by the Court in the Proposed Notice and the Proposed Text Message. Specifically, Plaintiff must update the Proposed Notice (including the proposed consent-to-join form at the end of the Proposed Notice) by: (1) removing any and all references to Plaintiff's counsel serving as "class counsel" or counsel for the FLSA Collective; (2) making clear to any opt-in plaintiffs that they are not *required* to be represented by Plaintiff's counsel, but rather may choose instead to retain their own counsel in this action and that if they choose to retain their own counsel, they may do so without being required to file an entirely separate lawsuit; (3) including an additional proposed consent form or otherwise updating the current consent-to-join form to permit opt-in plaintiffs to consent to joining this suit *without* designating Plaintiff's counsel as their attorneys;[21] (4) removing any provision requiring an opt-in plaintiff to designate Plaintiff's counsel as their "agents," requiring an opt-in

---

[21] For clarity, the Court notes that Plaintiff may include a consent-to-join form in the Proposed Notice that allows (rather than requires) opt-in plaintiffs to select Plaintiff's counsel to represent them, assuming such consent-to-join form is updated to correct the other deficiencies identified by the Court herein. The Court notes, though, that counsel naturally should consider whether their joint representation of multiple plaintiffs poses in any respect actual or potential conflicts of interest that would need to be resolved for such joint representation to continue in that respect.

plaintiff to permit Plaintiff's counsel to represent their interests, or requiring an opt-in plaintiff to be bound by any of Plaintiff's decisions; and (5) including the required additions to the Proposed Notice noted above by the Court in response to Defendant's objection to the Proposed Notice.

Likewise, the Proposed Text Message must be updated by: (1) removing the language from the Proposed Text Message that the Court has quoted above that may indicate to opt-in plaintiffs that the Court has designated Plaintiff's counsel as the agent of the opt-in plaintiffs; and (2) including the additions to the Proposed Text Message noted above by the Court in response to Defendant's objection to the Proposed Text Message.

Given the above deficiencies noted by the Court with respect to the Proposed Notice and the Proposed Text Message, Plaintiff shall be ordered (in an accompanying order) to file updated versions of the Proposed Notice and Proposed Text Message reflecting the changes required and specified by the Court herein. Defendant shall be permitted to file objections, if any, to the updated versions of the Proposed Notice and Proposed Text Message.

The Court will make one final observation as to the scope of the Proposed Notice and Proposed Text Message as it relates to the statute of limitations for FLSA claims. As noted above, Plaintiff seeks to send its Proposed Notice and Proposed Text Message to "[a]ll current and former Recruiters who worked for Vaco LLC during the past three years." (Doc. No. 39-2 at 3). As noted in a footnote above—and throughout this Memorandum Opinion—the Court discerns that by using the phrase "past three years," Plaintiff means to refer to individuals who have worked as Recruiters at Vaco LLC from three years prior to the date that the Complaint was filed to the date that the Complaint was filed—that is from December 1, 2020 to December 1, 2023 (the date that the Complaint was filed). This date range makes some sense for two reasons. First, in his Complaint, Plaintiff alleges that "Plaintiff brings this action on behalf of all of Defendant's current and former

recruiters who worked for Defendant at any time during the past three years." (Doc. No. 1 at ¶ 37). Second, the statute of limitations in FLSA cases is generally two-years and is three-years in cases of a willful violation of the FLSA, 29 U.S.C. § 255(a), and the statute runs until individuals affirmatively opt-in to a collective action. *See Crosby*, 348 F. Supp. 3d at 750 ("The statute of limitations is not tolled for any individual class member until that individual has filed a 'written consent to join form' with the court. 29 C.F.R. § 790.21(b)(2)."); *Thomas v. Acopia*, LLC, No. 3:14-cv-0974, 2015 WL 13667053, at *5 (M.D. Tenn. Mar. 23, 2015) ("the statute of limitations continues to run and the pool of timely claims continues to shrink until either all putative class members' claims have become time-barred or they have consented to join the suit within the limitations period.").

Importantly for this action—given that the Motion has been pending for some time (since August 30, 2024), so that some potential claims of members of the FLSA Collective may have become barred by the statute of limitations—the FLSA's limitations period can (not to say must) be subject to equitable tolling. *See e.g., Ware v. T-Mobile USA*, No. 3:11-CV-0411, 2012 WL 13322790, at *6 (M.D. Tenn. Aug. 28, 2012) (collecting cases). And where motions for court-authorized notice have been pending for some time, some courts have found that the equitable tolling of the limitations period is warranted. *See Biggs v. Quicken Loans, Inc.*, No. 10-CV-11928, 2014 WL 12661985, at *5 (E.D. Mich. Feb. 19, 2014) (granting Plaintiff's request for equitable tolling and observing that "[e]quitable tolling of FLSA cases due to extended periods of delay due to Court action or order is common"); *Klick v. Cenikor*, 509 F. Supp. 3d 951, 959-60 (S.D. Tex. 2020). But the undersigned has come out the other way, at least in one case. *Hanna v. Marriott Hotel Servs., Inc.*, No. 3:18-CV-00325, 2021 WL 4171490, at *1 (M.D. Tenn. Sept. 14, 2021) (Richardson, J.).

Although neither party has briefed the issue of whether equitable tolling applies to some of the claims of particular members of the FLSA Collective, the Court discerns that this issue is likely to be an important one. With that having been said then, although the Court is permitting Plaintiff to send notice to members of the FLSA Collective (including to individuals who have claims that may ultimately be subject to the statute of limitations if the statute is not tolled), the Court will reserve for now the issues of (i) the extent to which equitable tolling applies (whether generally or on a plaintiff-specific basis) in this action and (ii) whether Plaintiff has sufficient evidence of willfulness to justify application of a three-year limitations period (rather than the two-year limitations period). *See, e.g.*, *Hogan*, 690 F. Supp. 3d at 778 ("[T]he parties' debate concerning whether the FLSA statute of limitations should be two years or three years requires a merits-based determination that is inappropriate at [the court-authorized notice]stage of the case.").

<u>CONCLUSION</u>

Accordingly, and for the reasons stated herein, Plaintiff's Motion (Doc. No. 38) will be **GRANTED** to the extent it seeks to send court-authorized notice to members of the FLSA Collective and **DENIED** to the extent it seeks to send notice in the form that Plaintiff has proposed and to the extent it seeks to have Plaintiff's counsel appointed as counsel for the FLSA Collective.

An appropriate accompanying order shall be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE