**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ATWORK FRANCHISE, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:25-CV-00924** |
| | ) | |
| **ARCH SPECIALTY INSURANCE COMPANY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

# MEMORANDUM OPINION

Arch Specialty Insurance Company ("Arch") has filed a motion to dismiss because AtWork Franchise, Inc. ("AtWork") has failed to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 14). The motion is ripe for decision. (Doc. No. 18, 20). For the reasons that follow, the motion will be granted in part and denied in part.

## I. Factual Background and Procedural History[1]

AnthroWare is suing AtWork because it did not pay for services rendered. AnthroWare alleges that, on or around February 7, 2022, AnthroWare and AtWork entered into a written contract "to provide technical consulting services and other specific services." (Doc. No. 1-1 at 109, ¶¶5-6). The original period of the agreement was extended by several Statements of Work ("SOW") 2, 2.1, 2.1-2, and 3.1. (Doc. No. 101 at 111-113, ¶¶ 15-29). On January 31, 2024, a proposed SOW-3.2 was tendered by AnthroWare with a duration until July 30, 2024. (Doc. No. 1-1 at 114, ¶ 32). It was not signed by either party. (Doc. No. 1-1 at 114, ¶ 34). AnthroWare alleges

[1] The facts surrounding the underlying action brought by AnthroWare, LLC ("AnthroWare") have been sufficiently set out by the parties and the Court will only address them as needed. Additionally, when this opinion cites to a page in Doc. No. 1-1, it refers to the page number ("Page ___ of ____") created during electronic case filing process.

that AtWork paid only $131,223.00 for the services rendered from April through June 2024. (Doc. No. 1-1 at 114, ¶ 36). Additionally, AtWork did not pay AnthroWare anything for services rendered after June 2024. (Doc. No. 1-1 at 114, ¶ 37). By July 10, 2024, "AtWork repudiated any obligation to pay AnthroWare in accordance with SOW-3.1 . . . for the reasonable value of the services rendered thereafter." (Doc. No. 1-1 at 114, ¶ 38).

As a result, AnthroWare brought a lawsuit against AtWork in North Carolina alleging four causes of action: (1) "Breach of Master Services Agreement and SOW-3, as Amended by SOW-3.1"; (2) "Quantum Meruit"; (3) "Breach of Master Services Agreement and SOW-3, as Amended by SOW-3.1 and SOW-3.2 (in the alternative to the first and second causes of action)"; and (4) "Declaratory Judgment". (Doc. No. 1-1 at 8, ¶¶ 9-10). The amended complaint is the operative pleading. (Doc. No. 1-1 at 108-120).

AtWork promptly notified its insurer, Arch, about the North Carolina action. AtWork had secured a "Directors, Officers, & Organization" insurance policy ("Policy") stating that Arch would grant coverage and pay "**Loss** on behalf of a **Franchisor** resulting from a **Claim**…made against such **Franchisor**…for a **Wrongful Act.**" (Doc. No. 1-1 at 39). These "[w]rongful [a]cts", as defined by Insuring Agreement 1.C, include "any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty[.]" (Doc. No. 1-1 at 43). However, this coverage is limited by an exclusion provision in the Policy. As is relevant here, the Policy in Section 4.B.1 Organization Claim Exclusions provides that Arch would not cover "**Loss**…for any liability under any contract or agreement[.]" (Doc. No. 1-1 at 46). The purpose for the exclusion, Arch maintains, "is to avoid the moral hazard of shifting contractual duties to insurance companies" and "breach its contracts with impunity with the expectation to pass the cost off to the insurer." (Doc. No. 14 at 16) (citations omitted).

Relying on the exclusion in Section 4.B.1, Arch refused to defend and indemnify AtWork against AnthroWare's North Carolina lawsuit because it arises from an alleged breach of contract that triggers the exclusionary provision. Because the nature of the claims rely on the alleged breach of contract, Arch reasoned, the policy provided no coverage.

AtWork brings this action against Arch for breach of contract – duty to defend; breach of contract – duty to indemnify; declaratory relief; and bad faith failure to pay a claim pursuant to Tenn. Code Ann. § 56-7-105. (Doc. No. 1-1 at 9-12, ¶¶ 20-47).

## II. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is properly granted if the plaintiff fails "to state a claim upon which relief can be granted[.]" To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Venema v. West, 133 F.4th 625, 632 (6th Cir. 2025) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Facial plausibility exists "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). Hence, in resolving the motion, "the court accepts the complaint's well-pleaded allegations as true, construes the complaint in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor." Mod. Mortg. Lending, Inc. v. Sanders, No. 3:25-cv-00842, 2026 U.S. Dist. LEXIS 169433, at *3 (M.D. Tenn. July 30, 2026) (citing Eastep v. City of Nashville, 156 F.4th 819, 826 (6th Cir. 2025)).

Courts may consider "the content of the complaint, although it may also consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to or incorporated by reference into the complaint." Hill v. Ardent Health Servs., 806 F. Supp. 3d 711, 715 (M.D. Tenn. 2025) (citing Amini v. Oberlin College, 259 F.3d 493, 502 (6th Cir. 2001)).

Accordingly, the Court will consider the complaint, AnthroWare's amended complaint, and the Policy attached as an exhibit.

## III. Applicable Law

The parties agree Tennessee law governs the Policy. Tennessee law is clear that "an insurance policy is a contract," Christenberry v. Tipton, 160 S.W.3d 487, 492 (Tenn. 2005)), subject to the same rules of interpretation as any other contract. Am. Justice Ins. Reciprocal v. Hutchinson, 15 S.W.3d 811, 814 (Tenn. 2000). The policy terms, therefore, are "given their plain and ordinary meaning" to give effect to the "intent of the parties." Clark v. Sputniks, 368 S.W.3d 431, 441 (Tenn. 2012) (internal quotation marks and citations omitted). This "ordinary meaning" is "'the meaning which the average policy holder and insurer would attach' to the policy language."[2] Artist Bldg. Partners v. Auto-Owners Mut. Ins. Co., 435 S.W.3d 202, 216 (Tenn. Ct. App. 2013) (quoting Swindler v. St. Paul Fire & Marine Ins. Co., 444 S.W.2d 147, 148 (1969))). The disputed section should also be understood in the context of the whole agreement. See Travelers Indem. Co. of Am. v. Moore & Assocs., 216 S.W.3d 302, 306 (Tenn. 2007); see also Shempert v. Cox, 513 S.W.3d 469, 473 (Tenn. Ct. App. 2016) ("The policy should be construed 'as a whole in a reasonable and logical manner' and the language in dispute should be examined in the context of the entire agreement.") (internal citations omitted).

If the terms are unambiguous, the court's "inquiry ends… [and] the policy 'will be enforced as written.'" CapWealth Advisors, LLC v. Twin City Fire Ins. Co., No. 23-5359, 2024 U.S. App.

[2] The Tennessee Court of Appeals has recently reiterated, just as the parties recognize, that "insurance contracts must be read as a layperson would." Zurich Am. Ins. Co. v. Tom James Co., No. M2025-00404-COA-R9-CV, 2026 Tenn. App. LEXIS 281, n. 5 (Tenn. Ct. App. Jun. 3, 2026) (citing Martin v. Powers, 505 S.W.3d 512, 517 (Tenn. 2016)). However, the Court of Appeals has cautioned that this simply means reading the policy without the need to "consult a long line of case law or law review articles and treatises to determine the extent of coverage." Id. (internal quotation marks and citations omitted). The usage of "dictionary definitions" and "provision's definitions" are sufficient to meet this standard. Id.

LEXIS 6313, at *6 (6th Cir. Mar. 15, 2024) (quoting Certain Underwriter's at Lloyd's of London v. Transcarriers Inc., 107 S.W.3d 496, 499 (Tenn. Ct. App. 2002)). If, however, the terms are ambiguous, meaning that they are "susceptible [to]…more than one reasonable interpretation", then the policy is construed "in favor of the insured." Id. "Because the insurance company drafted the policy, ambiguous language 'must be construed against the insurance company and in favor of the insured.'" Id. (quoting Am. Just. Ins. Reciprocal v. Hutchinson, 15 S.W.3d 811, 815 (Tenn. 2000)).

Moreover, "'the obligation of a liability insurance company to defend an action brought against the insured by a third party is to be determined solely by the allegations in the complaint in that action.'" Gen. Agents Ins. Co. of Am., Inc. v. Mandrill Corp., 243 Fed. App. 961, 964 (6th Cir. 2007) (quoting Saint Paul Fire and Marine Ins. Co. v. Torpoco, 879 S.W.2d 831, 835 (Tenn. 1994)). Even if only one of the claims in the complaint is covered under the policy, "'the insurer has a duty to defend, irrespective of the number of allegations that may be excluded by the policy.'" Id. (quoting Drexel Chem. Co. v. Bituminous Ins. Co., 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996)). This depends not on the actual facts of the case, but rather solely on the allegations of the pleadings. Id. "Any doubt as to whether the claimant has stated a cause of action within the coverage of the policy is resolved in favor of the insured." Certain Underwriters at Lloyd's London v. Jupiter Managing Gen. Agency, Inc., 596 F. Supp. 3d 1039, 1044 (M.D. Tenn. 2022) (internal quotation marks and citations omitted).

## IV. Analysis

The textual language of the Policy is not in dispute relative to the breach of contract claims. The exclusionary language in Section 4.B.1 of the Policy limits liability arising from "any contract or agreement[.]" (Doc. No. 1-1 at 46). Here, AtWork and AnthroWare entered into

a written contract for services and several SOWs that AtWork allegedly failed to pay. (Doc. No. 1-1 at 115). Atwork's failure to pay is an "omission" and would qualify as a "Wrongful Act" and trigger coverage. However, given that the alleged liability arose from a written contract between AtWork and AnthroWare, the Section 4.B.1 exclusionary language applies to and disposes of the contract related claims, but what about the quantum meruit claim.

**A. Quantum Meruit Claim**

The question is whether AnthroWare's quantum meruit claim is based on a "wrongful act" that is not "under any contract or agreement[.]" This question is dispositive of the pending motion.

Arch first argues there is no coverage owed under the Policy because the coverage exclusion provision clearly disclaims any liability stemming from any contract. (Doc. No. 1-1 at 46). Because there is no policy coverage for the quantum meruit claim alleged, Arch argues that it does not have a duty to defend or a duty to indemnify Arch for any potential award of damages. AtWork counters that Section 4.B.1 does not exclude coverage because the essence of a claim of quantum meruit is the *absence* of a contract. So AtWork maintains that Arch must defend and indemnify it in the North Carolina case. Alternatively, even if Arch's argument were plausible, AtWork argues, there is sufficient ambiguity --- whether the terms "any contract or agreement" includes a quantum meruit claim --- within the provision to survive dismissal.

North Carolina law applies to the claims brought by AnthroWare in the North Carolina action. In North Carolina, quantum meruit is an equitable remedy that exists "in order to prevent unjust enrichment[.]" Waters Edge Builders, LLC v. Longa, 715 S.E.2d 193, 196 (N.C. Ct. App. 2011). This is a remedy that exists solely in equity, regardless of any contract. (Doc. No. 18 at 10). In fact, it is a remedy created solely to address a situation where there is no contract, Booe v. Shadrick, 369 S.E.2d 554, 556 (N.C. 1988), because recovery under a quantum meruit claim is not based on any "actual agreement." Paul L. Whitfield, P.A. v. Gilchrist, 497 S.E.2d 412, 415 (N.C.

1998). Logically, "only in the absence of an express agreement of the parties will courts impose" liability under a quantum meruit claim "in order to prevent an unjust enrichment." Id. (Booe, 369 S.E.2d at 556). The elements of quantum meruit can be best thought of as the antithesis of a breach of contract claim because it is an equitable remedy available to avoid unjust enrichment.

Because North Carolina law makes this clear distinction, a policy exclusion that bars coverage under any contract or agreement is --- as Arch claims it to be --- an unambiguous policy exclusion. It simply does not extend to bar a claim that is not based upon a contract. Booe, 369 S.E.2d at 556 ("a quasi contract or a contract implied in law is not a contract."). By operation of law and equity when services are rendered and not paid for, that is a "Wrongful Act" and equity demands payment. As a result, AtWork is entitled to coverage.

If the Court read the exclusionary language as broadly as Arch alleges, it would necessarily follow that the insurance policy would bar any liability or coverage owed when (1) there is a contract and (2) when there is no contract. The Court is not prepared to endorse that illogical reading. The Court's reading is consistent with the overall purpose of exclusionary language in Section 4.B.1 because the equitable remedy of quantum meruit ensures that the "Wrongful Act" is subject to a remedy. 1 Gibson's Suits in Chancery § 2.02 (8th ed. 2004). Hence, Arch's argument must fail.

**B. Bad Faith Claim**

In its motion, Arch also seeks the dismissal of AtWork's Tenn. Code Ann. § 56-7-105 bad faith claim on the basis that subsection (a) does not apply. (Doc. No. 14 at 17-18). Subsection (a) only pertains to "insurance companies authorized to do business in the state[.]" (Doc. No. 14 at 17). As a surplus line insurer, this subsection does not apply. (Doc. No. 14 at 18). Instead, Arch

maintains that the true applicable standard is set out in subsection (b). (Doc. No. 14 at 18). The Court agrees, also finds that AtWork has alleged sufficient facts to meet either standard.

The complaint more than adequately alleges facts that Arch unlawfully refused to provide coverage "within the meaning of Federal Rule of Civil Procedure 8." Mayhew v. Town of Smyrna, 856 F.3d 456, 466 (6th Cir. 2017). Paragraphs 41 through 47 of the complaint detail AtWork's specific allegations regarding Arch's refusal to cover the North Carolina lawsuit; that AtWork tendered the action within the time limits before filing suit; and that the subsequent refusal was wrongful because coverage was triggered. (Doc. No. 1-1 at 11-12, ¶¶ 41-47). The complaint unambiguously provided Arch with sufficient notice of its claim. Mayhew, 856 F.3d at 467 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). As the Supreme Court has noted, the rules of civil procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." Johnson v. City of Shelby, 574 U.S. 10, 11 (2014) (per curiam).

**C. Intellectual Property Damages**

Arch further argues that AnthroWare's declaratory judgment claim about certain intellectual property, is not covered because definition of Loss excludes non-monetary relief. It provides no coverage for Loss "in connection with any Claim arising from, based upon, or attributable to infringement of any intellectual property rights[.]" (Doc. No. 14 at 9 n.5). AtWork did not respond to this argument and therefore, the Court considers it as unopposed, and any objection is waived or forfeited. See Allstate Ins. Co. v. Global Med. Billing, Inc., 520 F. App'x. 409, 412 (6th Cir. 2013).

An appropriate order will be entered.

WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE